## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

IN RE:

FRANK E. YOUNG FAMILY
PARTNERSHIP, LTD.
FRANK E. YOUNG,

　　　　Debtors.

_____/

CASE NO.: 08-12240-PGH ~~08-12241~~-PGH
CHAPTER 11

Jointly Administered

## PLAN OF REORGANIZATION FOR
## FRANK E. YOUNG

**KELLEY & FULTON, P.A.**
Attorneys for Debtor in Possession
1665 Palm Beach Lakes Blvd.
The Forum - Suite 1000
West Palm Beach, Florida 33401
Telephone:  (561) 491-1200
Facsimile:   (561) 684-3773

By:　_____
　　　　Craig I. Kelley, Esquire
　　　　Florida Bar No.: 782203

## TABLE OF CONTENTS

Article I - Definitions....................................................................................................1

Article II - Provisions for Administrative Claims & Fees ...................................................4

Article III - Classification of Other Creditor's Claims ......................................................5

Article IV - Impairment ..............................................................................................11

Article V - Liquidating Trust.........................................................................................11

Article VI - Execution of the Plan ................................................................................14

Article VII - Post-Confirmation Reorganized Debtor's Structure ....................................15

Article VIII - Executory Contracts and Unexpired Leases ..............................................15

Article IX - Modification of the Plan .............................................................................16

Article X- Confirmation Request .................................................................................16

Article XI - Effect of Confirmation................................................................................17

Article XII - Retention of Jurisdiction...........................................................................18

Article XIII - Miscellaneous ........................................................................................19

**FRANK E. YOUNG**, Debtor in Possession, hereby proposes the following Plan of Reorganization pursuant to Chapter 11 of the Bankruptcy Code.

### ARTICLE I - DEFINITIONS

For purposes of this Plan of Reorganization, and as may be amended, (hereinafter referred to as the "Plan") and to the extent not otherwise provided herein, the terms below shall have the respective meanings hereinafter set forth and, unless otherwise indicated, the singular shall include the plural and any term in the Plan which is not defined below, but which is used in the Bankruptcy Code, shall have the meaning assigned to it in the Bankruptcy Code.  The following terms when used in this Plan shall, unless the context otherwise requires, have the following meanings:

1.1     "Administrative Claim" means a claim allowed under Section 503(b) of the Bankruptcy Code that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code.

1.2     "Allowed Claim" means (1) any claim listed in the Debtor's Schedules as filed in connection with its Bankruptcy and not scheduled as unliquidated, contingent or disputed, and/or (2) any claim against the Debtor, a Proof of which was timely filed on or before the bar date established by Order of the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c) for claims against the Debtor's estate, against which filed claim no objection to the allowance thereof has been interposed, or as to any such objection there has been a final order entered and/or (3) any claim against the Debtor which is reduced to writing and is consented by the Debtor and liquidated in an amount, which writing has been approved by a final Order.

1.3     "Allowed Priority Claim" means that portion of an Allowed Claim entitled to

1

priority under Section 507(a)(3), (4) (6) and (8) of the Bankruptcy Code.

1.4    "Allowed Secured Claim" means an Allowed Claim of a creditor secured by a "Lien", as that term is defined in Section 101(37) of the Bankruptcy Code against any "property" of the Debtor's estate, but only to the extent of the "value", as determined by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012 or as otherwise agreed to, of such creditors interest in such estate's interest in such property, but excluding claims under Section 506(b). In accordance with the definition set forth in Section 506(a) of the Bankruptcy Code, an "Allowed Secured Claim" specifically excludes that portion of an Allowed Claim of a creditor having a Lien against any property of the Debtor's estate to the extent that the value of such creditors interest is less than the amount of such allowed claim. Only liens on property of the estate of the Debtor or on the proceeds thereof which are valid, perfected, and enforceable under applicable law and not subject to avoidance under the Bankruptcy Code or applicable non-Bankruptcy Law shall be an Allowed Secured Claim.

1.5    "Allowed Tax Claim" means any Allowed Claim of a taxing authority entitled to priority treatment under Section 507(a)(8) of the Bankruptcy Code.

1.6    "Allowed Unsecured Claim" means any Allowed Claim which is not an Administrative Claim, an Allowed Priority Claim, or an Allowed Secured Claim.

1.7    "Claimant" means the holder of a claim.

1.8    "Continuing Operations" means the ongoing business operation and such other businesses in which the reorganized Debtor may engage from time to time.

1.9    "Debtor" means **FRANK E. YOUNG**

1.10    "Disputed Claim" means any Claim designated as disputed, contingent or

2

unliquidated in the Debtor's Schedules filed in connection with this Bankruptcy Case, or any Claim against which an objection to the allowance thereof has been, or will be, interposed, and as to which no final Order has been entered.

1.11 "Effective Date" means thirty (30) days after the entry of the Order of Confirmation at which time the initial payments called for herein will commence, unless stated otherwise in the Plan.

1.12. "Family Partnership" – Frank E. Young Family Partnership, Ltd.

1.13 "Final Order" means an Order or Judgment entered by the Bankruptcy Court, or another Court of competent jurisdiction, in connection with the Debtor's reorganization case, which has not been reversed, stayed, modified, or amended and as to which the time to appeal or to seek certiorari, review or rehearing has expired, as to which no petition for certiorari, review or rehearing is pending or as to which any right to appeal or to seek certiorari, review or rehearing has been waived in writing in a manner satisfactory to the Debtor.

1.14 "Leases" means those certain Leases that are property of the Estate under which machinery, equipment or real property are leased to the Debtor or by the Debtor.

1.15 "Plan" means this Plan of Reorganization, including any amendments or modifications thereto.

1.16 "Priority Claim" means a claim which qualifies for priority treatment under Section 507(a)(3), (4) or (6) of the Bankruptcy Code, other than Administrative Claims and Tax Claims.

1.17 "Pro Rata" means in the same proportion as each creditor's Allowed Claim bears to the total claims of the class; i.e., a creditor's pro rata distribution shall be a

3

percentage of the total funds available for distribution which is equal to the amount of the creditor's claim, divided by the sum of (a) the total amount of all Allowed Claims and (b) the amount of all Disputed Claims.

1.18    "Record Date" means (a) for the purpose of voting on the Plan, the date of entry of an Order approving the Disclosure Statement with respect to the Plan, and, (b) for the purpose of any distribution to holders of allowed interest under the Plan, the Confirmation Date.

1.19 "Secured Creditor" means the holder of an allowed Secured Claim.

1.20 "Tax Claim" means a claim filed by a Taxing Authority alleging priority status under Section 507(a)(8) of the Bankruptcy Code.

1.21 "Unsecured Creditor" means the holder of an Allowed Unsecured Claim, other than an Administrative Claim, Priority Claim, Secured Claim or Tax Claim.

1.22 "Confirmation Date" means the date in which the Confirmation Order is entered on the Docket by the Bankruptcy Clerk.

1.23    "Confirmation Order" means an Order of the Bankruptcy Court confirming the provisions of the Plan of Reorganization, and any amendments or modifications thereto, pursuant to 11 U.S.C. Section 1129 of the Bankruptcy Code.

## ARTICLE II - PROVISIONS FOR ADMINISTRATIVE CLAIMS & FEES

2.1    Administrative Claims

All allowed Administrative Claims of the type specified in 11 U.S.C. Section 507(a)(1) shall be paid (a) in full on the Effective Date of the Plan, or (b) if such claim is objected to, on the date of the Final Order allowing any such Administrative Claim, or (c) upon such other terms as may be agreed to between the Debtor and each such Administrative

4

Claimant. All case related payments for services, costs, and expenses will be subject to Court approval.

2.2    All Fees Due Under Section 1129(a)(12) of the Bankruptcy Code shall be paid as required by 28 U.S.C. Section 1930, or as ordered by the Court at confirmation.

## ARTICLE III - CLASSIFICATION OF OTHER CREDITOR'S CLAIMS AND TREATMENT OF CLASSES OF CREDITORS AND CLAIMS UNDER THE PLAN

3.1    An Allowed Claim is part of a particular class only to the extent that the Allowed Claim qualifies within the definition of that class and, is in a different class to the extent that the remainder of the Claim qualifies within the description of a different class.

3.2    All payments under this Plan shall commence on the Effective Date of the Plan, unless indicated otherwise.

3.3    The remaining Creditors and Allowed Claims are divided into the following classes, which classes shall be mutually exclusive, and satisfied in full as follows:

A.    ***Administrative Claims:***  The administrative claimants include the Debtor's attorneys and the Office of the U.S. Trustee. Payment of the administrative claims for the Debtor's counsel is subject to set off for pre-petition retainers, as well as approval by the Court of very detailed fee applications. The scheduling Order for Confirmation will set forth a deadline for the filing of all administrative claims, which will be paid on the Effective Date (which is defined as 30 days after confirmation), unless other payment arrangements are reached between the Debtor and the claimant.

B.    ***Tax Claims:***

1.    The Internal Revenue Service has a priority claim in the amount of

5

$2,262,239.45. Claims number 3 and 4 are duplicative. Accordingly, Claim Number 4 will not be treated and sought to be stricken. The Debtor objects to the amount of the claim as an appeal is currently pending regarding this claim with the IRS as to the capital gains taxes in the amount of approximately $1,900,000.00. It is anticipated that the tax appeal will be completed on or before Year 2 of the Plan.

As more fully set forth below, the related Debtor referred to as the Family Partnership is liquidating assets in the Family Partnership and passing through the net proceeds into this estate to via a Liquidation Trust to pay creditors in this estate. The IRS claim will be paid, with 6% interest, an amount equal to 75% of the net sale proceeds that pass through from the Family Partnership from the liquidated assets upon closing, or as soon as practicable thereafter, until this claim is paid in full.

2.    The Palm Beach County Tax Collector has a priority claim in the amount of $19,069.48 for 2007 Real Property Taxes for real property located at 121 Anchorage Drive South, North Palm Beach, Florida. This claim will not be paid as the property will be surrendered to the lienholder Seacoast Bank, subject to any real estate tax claims.

C.    ***Other Claims:***

3.    <u>Class One:</u>  The secured claim of Seacoast Bank in the amount of $2,147,300.00. The real property at 121 Anchorage Drive South, North Palm Beach, Florida securing this debt will be surrendered to the claimant in full and final satisfaction of the claim.

4.    <u>Class Two:</u> The secured claim of BMW Financial Services in the amount of $77,388.00. The BMW vehicle securing this debt will be surrendered to the claimant in full and final satisfaction of the claim.

6

5.    Class Three: Unsecured Claims – General and Specific Treatment:

(a).    The unsecured guaranty claim of Wachovia Bank in the amount of $371,615.68. The actual borrower surrendered the vessel known as "Raising the Stakes" that secured the claimant's lien in full and final satisfaction of the claim.

(b).    The unsecured guaranty claim of Commerce Bank in the amount of $965,612.76. The two parcels of real property located at 40th Run North and 97th Road North, in Loxahatchee, Florida that secure this claim were surrendered by the borrower, Sunland, to the claimant in full and final satisfaction of the claim.

(c).    The unsecured guaranty claim of Sterling Bank in the amount of $7,330,006.44. The Debtor objects to $905,006.44 of this claim as this portion of the claim was paid down to the Creditor through the sale of the real property securing this portion of the claim; specifically described as 2 spec homes in Lexington Place, Vero Beach, Florida and one spec home in Royal Palm Beach Acreage in Palm Beach County, Florida. As to the remainder of the claim in the amount of $6,425,000.00, the borrower, Red River, LLC, intends to continue to make payments as required under the note and mortgage as said payments become due. A recent appraisal of the 135 acres of vacant land in St. Lucie County was recently appraised by Sterling Bank at $8,600,000.00. Therefore, this Debtor shall make no payments on this claim and the guaranty of the Debtor shall be discharged upon confirmation of the Plan of Reorganization.

(d).    The unsecured guaranty claim of Ben & Kathryn Schachter and the Schachter Family Limited Partnership in the aggregate claim amount of $5,547,000.00. However, $2,900,000.00 of this claim represents a note secured by a second position mortgage on 135 acres in St. Lucie County, Florida, owned by non-debtor borrower, Red River, LLC.

7

This is the same real property in which Sterling Bank holds a first mortgage position and was recently valued at $8,600,000.00. Prior to the bankruptcy filing, the claimant agreed to defer payment on said portion of its claim until property securing the claim is liquidated. The remaining amount of the claim in the amount of $2,647,000.00, represents an outstanding note by and between the claimant and Sunland Homes secured by a second mortgage on property known as Lexington Place in Vero Beach, Florida, which the Debtor personally guaranteed. Said property was surrendered to the first position lienholder, National City Bank, leaving the claimant fully unsecured. In satisfaction of the remainder of this claim, the claimant previously agreed to pursue a judgment against a third party for payment on said third party's personal guaranty on the Sunland debt. If the claimant is not successful in its pursuit of the third party, the claimant agreed to accept a lien in the amount of $1,300,000 secured by the real property owned by Red River and referenced above (135 acres in St. Lucie County, Florida). Accordingly, the guaranty liability on this claim will be discharged upon confirmation of the Plan of Reorganization and there will be no distribution under the Plan on this claim.

(e).    The unsecured guaranty claim of National City Bank in the amount of $13,465,157.32.    The actual borrowers are Sunland Construction and Sunland Development. The real property that secures this claim (200 developed lots and fourteen (14) spec homes in Vero Beach, Florida in a development known as Lexington Place) will be surrendered to National City Bank in full and final satisfaction of its claim. A foreclosure action is pending by National City Bank.

(f).    The unsecured guaranty claim of City National Bank in the amount of $14,600,000.00. The non-debtor borrower, Midway Properties, LLC, funded the interest

8

reserve payment in the approximate amount of $950,000.00 due to the claimant, which serves to extend the loan for one (1) year. The non-debtor borrower will maintain its ownership of the subject real property, which is 400 acres of vacant land located in St. Lucie County, Florida, and pay this claim outside bankruptcy. Notwithstanding the foregoing, the guaranty liability on this claim will be discharged upon confirmation of the Plan of Reorganization and there will be no distribution under the Plan on this claim.

(g).    The unsecured claim of Countrywide Mortgage in the amount of $959,828.00. The title to the property at 149 Ebbtide Drive, North Palm Beach, Florida is in the name of the Family Partnership and said property is to be surrendered in full and final satisfaction of the claim.

(h).    The general unsecured claim of Lennar in the amount of $2,687,804.82 should not have been filed in this bankruptcy. This claimant is a creditor of Sunland only. The Debtor has no obligation to this claimant, which claim should be stricken, and there will be no payment on this claim by the Debtor.

(i).    The remaining general unsecured claims include all other allowed claims of Unsecured Creditors, subject to any Objections that are filed and sustained by the Court. To the extent that a creditor is paid in the Frank E. Young Family Partnership, Ltd. Bankruptcy case, such creditor will not receive a distribution by the individual Debtor in this case, so as to avoid double payment. The undisputed general unsecured claims total the amount of $403,837.24 including the reduced claim amount of $1,349,970.00 due to Ben & Kathryn Schachter and the Schachter Family Limited Partnership.

The allowed general unsecured creditors will receive a pro rata distribution of five percent (5%) of the net sale proceeds from the real property interests owned by the Family

9

Partnership that are to be liquidated, after payment of any priority real estate tax claims and sale expenses. The aforementioned net sale proceeds with be allocated as follows based upon the current 98% ownership interest of Frank Young in the Family Partnership:

(1).    75% will be transferred from the Family Partnership to this estate to pay the priority IRS tax claims referenced above until paid in full;

(2).    5% will be transferred from the Family Partnership to this estate to pay allowed general unsecured creditors of this estate on a pro rata basis, not to exceed $21,000.00;

(3 ).    5% will remain in the Family Partnership to pay the allowed general unsecured Creditors of that estate on a pro rata basis, not to exceed $21,000.00; and

(4).    15% will remain in the Family Partnership to fund the operations and debt service of the Family Partnership.

Confirmation of the Plan will have the effect of establishing a Liquidation Trust, without the necessity of further documentation, for the benefit of the allowed priority and general unsecured creditors in the name of the reorganized Debtor.

Upon the sale of any specified assets of the Family Partnership, five percent (5%) of the net sale proceeds will be transferred to said Trust and the allowed general unsecured creditors will receive a pro rata share of the interests in the Trust, in an amount not to exceed $21,000.00. Such payment shall be made within ten (10) from the closing date on the sale of assets generating such revenue and transfer of such funds from the Family Partnership to the Debtor herein. The remaining portions of any unsecured claims that are not paid as set forth herein, shall be discharged.

3.4    Blank Ballot

10

Any ballot not filed in accordance with the filing instructions on the Ballot pertaining to this Plan shall be not be counted for voting purposes.

## ARTICLE IV - IMPAIRMENT

4.1    According to the above terms of this Plan, the claims in classes One, Two and Three are impaired and there are no are no unimpaired classes.  Impaired Classes will be treated as fully set forth in Article III above.  Unimpaired classes are not entitled to vote for the Plan.

## ARTICLE V – LIQUIDATING TRUST

5.1    The Plan provides for the establishment of a Liquidating Trust for the benefit of the allowed priority and general unsecured creditors (hereinafter "unsecured creditors") in the name of the reorganized Debtor. Upon the sale of the Family Partnership's interest in Red River, LLC; Orange Grove Investments, LLC; Platinum Real Estate Ventures, LLC; Linton Grove Investment, LLC and St. Lucie Locks, LLC, seventy-five percent (75%) of the net sale proceeds will be transferred from the Family Partnership to the Trust for the benefit of the Frank E. Young's priority tax claims to the IRS; five percent (5%) of the net sale proceeds will be transferred from the Family Partnership to the Trust for the benefit of the Family Partnership's allowed general unsecured creditors; and five percent (5%) for the benefit of Frank E. Young's allowed general unsecured creditors. The reorganized Debtor will distribute such funds to the allowed unsecured creditors on a pro rata basis within ten (10) days from the closing date on the sale of assets.

5.2     From and after the Confirmation of the Plan, the Trust shall have as its sole purpose the distribution of the net sale proceeds for the sole benefit of the allowed unsecured creditors, with no objective to continue or engage in the conduct of a trade or business. The Debtor shall exercise reasonable business judgment in effectuating the sale of its assets for the benefit of the allowed unsecured creditors. To the extent that beneficial interests in the Trust constitute securities issued in accordance with the Plan, the Debtor believes that the distribution of such interests satisfies the requirements of section 1145(a) of the Bankruptcy Code, and, therefore, are exempt from registration under the Securities Act and state securities laws.   HOLDERS OF BENEFICIAL INTERESTS IN THE LITIGATION TRUST ARE URGED TO CONSULT THEIR LEGAL AND OTHER ADVISORS REGARDING THE APPLICABILITY AND OPERATION OF FEDERAL AND STATE SECURITIES LAWS IN CONNECTION WITH ANY SUBSEQUENT TRANSFER OF ANY SUCH INTEREST.

5.3     The obligations and expenses of the Trust, if any, will be funded by the net sale proceeds. Said obligations and expenses will be paid before any pro rata distribution is made to the allowed unsecured creditors. In addition, the Debtor has the option, in its sole and absolute discretion, of loaning the Trust an amount necessary to cover any shortfall in available funds needed to cover the obligations and expenses of the trust to be repaid upon distribution of net sale proceeds.

5.4     The Trust may retain such professionals, including any professionals retained by the estate during the Bankruptcy Case, as may be appropriate under the circumstances.

12

The Debtor shall be authorized to pay the reasonable and necessary fees and expenses of such professionals without the necessity of Bankruptcy Court approval.

5.5     All distributions to the holders of interests in the Litigation Trust shall be made in accordance with such claimants' respective Pro Rata shares of the beneficial interests held therein and within ten (10) days from the closing date on the sale of assets.

5.6     The Debtor shall file or cause to be filed any statements, returns, or disclosures relating to the Trust that are required by any governmental unit or applicable law.  The Debtor shall be authorized to collect such tax information from the holders of beneficial interests in the Trust (including, without limitation, social security numbers and/or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan.  Failure by any such holder of a beneficial interest in the Litigation Trust to furnish such information in a timely fashion may cause a waiver of some or all of such holder's rights (if any) under the Plan and the Confirmation Order.

5.7     The Debtor and the holders of beneficial interests in the Litigation Trust will treat the Litigation Trust as a "liquidating trust" within the meaning of Treasury Regulation § 301.7701-4(d) and any comparable provision of state or local law.  The Debtor shall be authorized to take any action necessary to maintain compliance with this regulation or its successor that does not contradict the terms of the Debtor's Plan of Reorganization.

5.8     The Trust shall terminate its existence upon the occurrence of the earlier of (a) the liquidation, administration and distribution of the Debtor's Assets in accordance with the Plan and the full performance of all other duties and functions set forth in the Plan and

13

the Liquidation Trust or (b) the fifth anniversary of the date of the formation of the Liquidation Trust, subject to one or more finite extensions approved by the Bankruptcy Court.

## ARTICLE VI - EXECUTION OF THE PLAN

6.1    The creditors will be paid from the current and the projected future income received by the Debtor from the sale of real estate holdings and interests of the Debtor and the Family Partnership.  The Debtor submits that there will be sufficient income to make all distributions pursuant to the Plan on the secured claims and provide a reasonable dividend to unsecured creditors, as reflected in the Disclosure Statement and Exhibits attached thereto.

6.2    The funds necessary for the payments to Creditors shall be generated from the sales of real estate holdings and asset interests of the Debtor and the Family Partnership, which will increase as the Debtor and the Family Partnership are able to market and sell assets.

6.3    The Plan contemplates an increase in net revenues from sales of assets from reduced overhead and market recovery after confirmation of the Plan, coupled with the cessation of fees and costs of the reorganization process.

6.4    Upon the entry of the Confirmation Order, the Debtor shall be vested with all the Debtor in Possessions' rights, title and interests in the assets of FRANK E. YOUNG, free and clear, of all claims and interests of Creditors, except as otherwise provided herein. The tax provisions and exemptions of 11 U.S.C., Section 1146 shall apply to all transactions contemplated by this Plan.

14

6.5     After the entry of Order of Confirmation, the Debtor and the Reorganized Debtor will manage his financial and business affairs without further supervision of the Court.

6.6     The Disbursing Agent for the initial distribution under the Plan is the firm of Kelley & Fulton, P.A.  All subsequent payments shall be made by the Debtor and/or the reorganized Debtor.

### ARTICLE VII - POST-CONFIRMATION REORGANIZED DEBTOR'S STRUCTURE

**FRANK E. YOUNG** is an individual who resides in North Palm Beach, Florida. The Debtor shall continue to manage his personal affairs as a reorganized Debtor post-confirmation.

### ARTICLE VIII - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1     The Debtor is not currently a party to any Executory Contracts or Leases, except a post-petition Lease for a one year rental of a residence pursuant to a Lease Agreement between the Debtor and Landlord John David James Properties, LLC for Real Property Located at 6550 Sparrow Hawk Drive, Palm Beach Gardens, Florida. This Lease will be assumed.  The Debtor assigns the rights, title and interest to this Lease to the reorganized Debtor within the terms of the proposed Plan.

8.2     Any and all Executory Contracts and unexpired leases of the Debtor not expressly assumed within the proposed Plan, or not assumed prior to the Confirmation Date, shall be rejected. Any claim for a rejected contract or lease shall be paid as an General Unsecured Claim by agreement, or upon determination by the Court, to the extent

15

that such claims are allowed.

8.3    Any and all Executory Contracts and unexpired leases of the Debtor not expressly assumed herein, not assumed prior to the Confirmation Date, or as of the Confirmation Date, the subject of pending applications to assume, shall be rejected.

8.4    Any claim for a rejected contract or lease shall be paid as a General Unsecured Claim by agreement, or upon determination by the Court, to the extent that such claims are allowed.

## ARTICLE IX - MODIFICATION OF THE PLAN

9.1    The Debtor may propose amendments to or modifications of this Plan, and any amendments thereto, at any time prior to confirmation with the leave of Court upon notice to parties entitled to receive the same. After confirmation, the Debtor, may, with approval of the Court, and so long as it does not materially adversely affect the interest of creditors, remedy any defect or omission, or reconcile any inconsistencies of the Plan, or in the Order of Confirmation, in such a manner as is necessary to carry out the purposes and effect of this Plan.

9.2    The Debtor further reserve the right, at any time after confirmation, to pay down at a faster rate to any different class the sums indicated and set forth in Articles III above, should such monies be available.

## ARTICLE X - CONFIRMATION REQUEST

10.1   If all of the applicable provisions of 11 U.S.C. Section 1129(a), [other than paragraph (8)], are found to have been met with respect to the Plan, the Debtor seeks confirmation pursuant to 11 U.S.C. Section 1129(a). The Debtor reserves the right, in the

16

event that impaired classes reject the Plan of Reorganization, or any amendments or modifications thereto, to seek confirmation of the Plan pursuant to the "cramdown" provisions of 11 U.S.C. Section 1129(b), if the Court finds at a hearing on confirmation that the Plan does not discriminate unfairly and is fair and equitable with respect to each dissenting class.  According to the "absolute priority rule", if an impaired non-accepting class of creditors is not paid in full, then no junior class of claims or interests may receive or retain any property under the Plan on account of such claim or interest.  An exception to the aforementioned rule may exist if the principal(s) or equityholder(s) contribute new value to the Debtor in money or monies kind.  In the jointly administered cases, Frank Young and the Family Partnership are contributing new monies to fund confirmation, as well as liquidating their assets to fund the Plan and pay creditors a reasonable distribution.  The Debtor anticipates that once the required approvals from governmental units and permits are obtained, the value of Debtor's assets will increase in an amount well in excess of Frank Young's exempt and non-exempt assets, which constitute new value to the estate that is being forfeited and liquidated by Frank Young and the Family Partnership to pay creditors, which will provide more funds to creditors than they would otherwise receive in a Chapter 7 liquidation.  Furthermore, in order for the Plan to be confirmed, of the ballots or votes cast, Creditors that hold at least 2/3's in amount and more than 1/2 in number of the allowed claims of impaired classes must accept the Plan.

## **ARTICLE XI - EFFECT OF CONFIRMATION**

11.1    Discharge:

Except as otherwise provided in this Plan, confirmation of the Plan shall be deemed to have discharged the Debtor, pursuant to Section 1141(d)(1) of the Code from

17

any claim that arose on or prior to the Confirmation Date, and any claim of a kind specified in Section 502(g), (h) or (I) of the Bankruptcy Code whether or not: (i) a proof of the claim is filed or deemed to be filed under Sections 501 and 1111(a) of the Bankruptcy Code; (ii) such claim is allowed under Section 502 of the Bankruptcy Code; or (iii) the holder of such claim has accepted the Plan.

11.2    The payments to be made pursuant to this Plan by the Debtor and the Family Partnership shall be in full settlement and satisfaction of all claims against the Debtor and its principal.

## ARTICLE XII - RETENTION OF JURISDICTION

12.1    From and after entry of the Confirmation Order, the Bankruptcy Court shall retain such jurisdiction as is legally permissible over the reorganization case to insure that the purpose and intent of this Plan is carried out and for the following purposes: (a) to hear and determine any and all objections to the allowance of any claim; (b) to determine the classification of the claim of any creditor and the reexamination of any claims which have been allowed for the purposes of voting. The failure by the Debtor to object to, or to examine any claims for the purposes of voting, shall not be deemed a waiver of the Debtor's right to object, or reexamine the claim in whole or in part; (c) to hear and determine any and all applications for compensation for and reimbursement of expenses to professionals, as well to hear and determine any and all applications for compensation and reimbursement of expenses to professionals as well as to hear and determine claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code, and enforce all Orders entered on such fee applications; (d) to enable the Debtor to prosecute any and all proceedings which may be brought to set aside liens or encumbrances and to recover any

18

transfers, property, or damages to which the Debtor may be entitled under applicable provisions of the Bankruptcy Code or any Federal, State or local laws; including causes of action, controversies, disputes and conflicts between the Debtor and any other party including but not limited to any causes of actions for objects to claims, preferences or fraudulent transfers and obligations or equitable subordination; and to enter any Order showing that good, sufficient and marketable legal title is conveyed to the purchaser of any of the Debtor's property; (e) to consider any necessary valuation issues under Section 506 of the Code, and any proceeding to determine the amount, validity and priority in connection with the Debtor's property; (f) to determine the rights of any party with respect to the assumption or rejection of any Executory Contracts or Unexpired Leases; (g) to correct any default, cure any omission or reconcile any inconsistency in the Plan or Order of Confirmation, as may be necessary to carry out the purposes and intent of this Plan; (h) to modify this Plan after Confirmation, pursuant to applicable sections of the Code; (i) to enforce and interpret the terms and conditions of this Plan; (j) to enter Orders to enforce the title, rights and power of the estate as the Court may deem necessary; (k) to enter Order concluding and closing this case; (l) to make such Order or give such directions as may be appropriate under Section 1142 of the Code.

## ARTICLE XIII- MISCELLANEOUS

13.1    Headings:

Headings are utilized in this Plan for the convenience of reference only, and shall not constitute a part of this Plan for any other purpose.

13.2    Defects, Omissions and Amendments:

This Plan may be altered, amended or modified by the Debtor before or after the

Confirmation Date as provided in Section 1127 of the Bankruptcy Code.

13.3   Governing Law:

Except to the extent that the Bankruptcy Code or State Law is applicable, all rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with the Laws of the State of Florida, and venue in the Southern District of Florida, West Palm Beach Division or Palm Beach County.

13.4   Severability:

Should any provision of this Plan be determined to be unenforceable, such determination in no way limit or affect the enforceability and the operative effect of any or all other provisions of this Plan.

13.5   Consistency

Should any portion of this Plan or accompanying Disclosure Statement conflict with and portion of the Petition, Schedules, Statement of Financial Affairs, pleadings or correspondence related to this matter, then the terms herein shall prevail and supersede all others.

13.6   Quarterly Trustee Fees - The Debtor is current in the payment of all quarterly fees to the U.S. Trustee to date.  Pursuant to 28 U.S.C. Section 1930(a)(6), the Debtor shall pay to the U.S. Trustee's office all appropriate quarterly fees based upon post-petition disbursements until this case is closed by the entry of a final decree on the confirmed Plan.  Notwithstanding any other provisions of the Plan to the contrary, the Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. Section 1930(a)(6), within ten (10) days of the entry of the order confirming this Plan, for pre-confirmation periods and simultaneously provide to the United States Trustee an

appropriate report indicating the cash disbursements for the relevant period. The Debtor, as a reorganized debtor, shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. Section 1930(a)(6) for post confirmation periods within the time period set forth in 28 U.S.C. Section 1930(a)(6), based upon all post-confirmation disbursements made by the reorganized debtor, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code, and the reorganized debtor shall provide to the United States Trustee upon the payment of each post-confirmation payment as appropriate report indicating all the cash disbursements for the relevant period.

21

This Plan of Reorganization has been executed this 24th day of September, 2008.

**FRANK E. YOUNG, INDIVIDUALLY**
**Debtor in Possession**

By: _____
        FRANK E. YOUNG, INDIVIDUALLY

KELLEY & FULTON, P.A.
Attorneys for Debtor in Possession
1665 Palm Beach Lakes Blvd.
The Forum - Suite 1000
West Palm Beach, FL 33401
Telephone: (561) 491-1200
Facsimile: (561) 684-3773

By: _____
        CRAIG I. KELLEY, ESQUIRE
        Florida Bar No.: 782203

21